Lane, C. J.
The newly-discovered evidence is cumulative only. At the trial it was shown that preparations were made, before starting, to overtake another boat; that fires were kept burning with great fierceness ; and that the boilers had become very hot;. that the escape of steam was attended with a peculiar shrill noise, denoting great pressure, and so loud as to awaken notice and. alarm. The new evidence is the testimony of a witness who,, going on board, was terrified by the violence of the fires, the intensity of the heat, and the glimmer from the ascent of heated air, “ which seemed to make the boilers creep and move in their beds,” and goes little further than to furnish additional evidence of facts-already before the jury.
*146 That a loss arising from an explosion of the boiler is covered by the policy, seems plain to us, when we consider the subject insured, and the nature of the risks to which it is of necessity exposed. The insurance was on a steamboat. The policy is in the form which has long been in use for marine *risks, and the words which describe the perils are largo enough to embrace all such as arise in the ordinary use of the thing insured. A policy on ships covers losses arising from accidents to the power which moves them, and it must bo presumed that the parties contemplated the same protection to a steamboat, when the loss occurs to her motive agencies.
The other causes for which the new trial is asked depend upon the right of the defendant to use the negligence of those managing the boat as a defense against this liability.
This point first came before this court in 1832. Lodwick v. Kennedy, 5 Ohio, 433. The business of insurance at that time was new in the western waters, and had rarely been the subject of investigation in our tribunals. The court, of which I was then a member, found the rule exonerating insurers from losses arising from the negligence of master and mariners, established in New York. Goix v. Law, 1 Johns. 346; Vos and Graves v. The United States Insurance Co., 2 Johns. 187; Grim v. Phœnix Insurance Co., 13 Johns. 457; and countenanced by such English authorities as were within our roach, and in entire correspondence with that gcnei’al principle, which makes the act of the servant the act of .the master.
In these earlier cases no distinction seems to have been taken Between losses which arise from the want of capacity and skill, and those which are the results of mere carelessness. The former class .are never covered by the policy. But there has been, through the recent jurisprudence, especially through a series of cases decided since that, in 5 Ohio, a modification of the rule, and a disposition to extend the responsibility of the insurer to the latter class of risks. The English cases may be found in 2 Barn. & Ald. 73; 5 Ib. 171; 5 Barn. & Cres. 219. The same charge has prevailed in the United States. It is recognized with favor in Patapsco Insurance Co. v. John Coulter, 3 Pet. 222; Columbia Insurance Co. v. Lawrence, 10 Ib. 517, and in some circuit court decisions; and is finally accepted in 11 Pet. 205, by the Supreme Court, as a well-,established principle of the law of insurance.
*147 *While this doctrine was assuming this form, and before it became an admitted principle of our commercial jurisprudence, it was again before this court, in Fulton & Foster v. Lancaster Insurance Company. I entirely concurred with my brethren in the opinion that no propriety was, at that time, shown for changing our position, as the new rule had not been then sanctioned by the direct authority of any ultimate American court. This uncertainty is distinctly dwelt upon by the judge who reported that case. The decision since made, in 11 Peters, 205, has supplied a precedent, of the most weighty character, settling the law, in the federal courts, in a manner likely to be followed in the courts of these states, where the law merchant is best understood.
The present case distinctly lays before us the propriety of noio adhering to our former decision. This is not a question of local law, springing from our own fountains of jurisprudence only, but a general commercial principle, resting on broader foundations, which ought to be uniform among all civilized nations. When the law of insurance has, in its fuller development, received an important modification, in the English and federal courts, and which, probably, will be the rule of the state courts, as fast as they act upon the question, it may be emphatically asked, whether the courts of Ohio should not conform to this change? It would be not a little inconvenient, as well as odd, if our citizens should receive one interpretation of the universal law merchant in our courts, while the stranger receives one different, by appealing to a different tribunal, which holds its seat by our side.
If the proposed change were wrong in itself, it ought not to be adopted; but it seems to commend itself to our acceptance, by its intrinsic propriety. The assured is bound to provide competent capacity and skill; it is a part of his implied warranty, and a duty which caution will enable him to perform; but the risks which arise from the carelessnesss of his servants, which are among the prominent perils he encounters, are those from which no prudence will defend him,-and from which he may well ask protection from the insurer. If, too, *the inquiry be extended beyond the proximate cause of loss, it will assume a latitude inconsistent with the distinct and intelligible rule, by which the rights of the parties should be defined. Wore the point now first offered to our courts, after these late discussions, it is hardly to be doubted that their modification would be received. And, since it has been accepted *148 in this form in these courts, to whose decisions we look for evidence of commercial law, and since we believe it has, in fact, become a well-settled doctrino of the law merchant, we feel it a duty to recede from the position heretofore taken in these adjudged cases. The adoption of such a principle renders the inquiry sought by defendants irrelevant, and leads us to overrule the motion.
Motion overruled. Judgment for plaintiff on the verdict.