## Snow v. Fletcher.

A contract by the payee of a promissory note to furnish, at a future time, to a member of a partnership, an indemnity against all the debts of the firm, is a good defense, to avoid circuity, to a suit on the note by the payee, or a person to whom it was transferred after it was dishonored.

Assumpsit against the two defendants, Bela J. Fletcher and Lewis W. Randall, and six others, described as late partners in trade, and all recently doing business at said Claremont, under the firm of "Division No. 47, Working Men's Protective Union." The declaration set forth that the defendants, "on the 13th day of August, 1856, then doing business as aforesaid, at said Claremont, by their promissory note of that date, subscribed by their president, Simeon Haywood, and their treasurer, John Hendee, for value received, by their said partnership name of Division No. 47, Working Men's Protective Union, promised one John Hendee, to pay him, or order, one hundred dollars, in thirty days after demand made on them, with interest."

The declaration then alleged that said note was duly indorsed and delivered to the plaintiff, and that a demand had been duly made. All the defendants were defaulted but Fletcher and Randall, who pleaded the general issue. The note declared on was introduced in evidence, and there was proof of a demand by Hendee, and that afterward he indorsed and delivered the note to the plaintiff as collateral security, early in the year 1861; that John Hendee, the payee of the note, was the same man who signed it as treasurer of the company; that said company was organized March 10, 1848; that a constitution and by-laws were adopted, and that the members signed their names in the records immediately after the by-laws; that there were originally a large number of members, and that these two defendants were among the original signers of the constitution and by-laws. Such portions of the original by-laws as were deemed material, were annexed to the case.

The defendant then introduced certain records of the company, for the purpose of showing that certain amendments and alterations in said by-laws had been made in May, 1856. Such portions of the records as are material on that point were annexed.

The plaintiff objected to these amended by-laws as evidence, on the ground that it did not appear from the records that there was the required number of the members present to act upon that question, or legally change or modify the by-laws. But the court admitted them, subject to the plaintiff's exception. Such portions of the amended by-laws as are material were annexed to the case. The eight defendants were all who acted as members of the company after the by-laws were thus amended.

It appeared that the company kept no books of account, and that credits had not been given to any considerable amount, until the last of December, 1856, when the defendant offered to show that the clerk of the company, who did the business in their store, commenced trusting out goods, and that during the six months previous

to July 1, 1857, he had thus trusted out about seven hundred dollars worth of the company's goods, and that this had been done in a large number of instances with the knowledge and by the direction of John Hendee, who was one of the three directors for that year, and that the amounts so trusted out, with the knowledge and consent of Hendee, which have not been collected, and are now deemed worthless, were larger than the plaintiff's claim in this suit. But the court excluded the testimony.

The defendant then offered to show that said Fletcher made some kind of an application in writing to the treasurer of said company, John Hendee, about the 25th of November, 1857, without being able to show its contents, and that on or about the 25th of January, 1858, he saw said Hendee in regard to that application; that Hendee was acting as a director of said company at that time; that Hendee then said that they had decided to pay him fifteen dollars, as his proportion of the property; that Fletcher accepted the money and gave up to Hendee his certificate, and that Fletcher never acted with the company after that. But the court excluded the testimony.

The defendant also offered to prove that said Randall, early in the winter of 1858, had an interview with said Hendee, who was acting as a director, and that said Hendee proposed to him to go out of the company upon his being paid fifteen dollars, the amount of his share; that Hendee then proposed to him that if he would thus go out he would give him a written indemnity against all past liabilities, and see him clear and harmless; that in this conversation Hendee made use of different expressions, saying he would discharge him from all past liabilities, and would give him an indemnity, and also that he would give said Randall a writing to indemnify him, and would discharge him from all past liabilities; that Randall accepted his offer; that Hendee then paid him fifteen dollars, the amount his due, and that he then gave up his certificate to Hendee, and that he had never taken any part as a member of said company since, but he did not offer to show that any such indemnity or discharge had ever been given him by said Hendee, unless what was said by Hendee at the time would operate as such discharge. But the court excluded the testimony. The court then ordered a verdict for the plaintiff. To all the rulings the defendants excepted, upon the grounds above appearing, and because the plaintiff had not shown that the directors authorized or had knowledge of the giving of the note in question, or the borrowing of the money, except the president and treasurer, who signed said note. No signatures had been disputed under the 44th rule. The defendants moved to set aside the verdict.

*Parker & Wheeler*, for the defendants.

The plaintiff having taken the note in suit as collateral security, and when it was over-due, holds it subject to the same defenses that existed against it in the hands of Hendee. Whether the new by-laws were legally adopted or not, Hendee and the defendants acted upon them as if adopted, and the parties to this suit are bound by their action. As between themselves the parties were not bound to

insist upon the thirty days' notice of an intention to withdraw, or upon any form of discharge. They saw fit to waive rights which they might have insisted on. On the application of Fletcher, Hendee repaid him the $15, and took back his certificate of membership, which is evidence of his withdrawal and discharge, upon which the jury should have passed. The offer to discharge and indemnify Randall, and see him harmless from all their past liabilities, accepted by him and acted upon by the parties, was a valid agreement upon a sufficient consideration ; and, to avoid circuity of action, may be shown in defense of this suit. *Foster* v. *Dawber*, 6 E. L. & E. 496.

The note declared upon appears to have been made by the president and Hendee without authority of the directors, to cover up a deficiency in the assets, caused by the misconduct of Hendee, and is not a valid note. The court should have admitted the evidence offered by the defendants, and the evidence admitted should have been submitted to the jury.

*Cushing*, for the plaintiff.

1. The testimony as to the alleged misconduct of Hendee was rightfully excluded, because it could not furnish any defense to this action. In order that it should be a defense, it would be necessary to hold that misconduct of a director would be followed by a forfeiture of all his rights in regard to the company—a monstrous proposition.

2. The testimony as to the discharge of the defendants was rightfully excluded, because the discharge from the company could not be of any avail against the creditors of the company. The agreement to indemnify, if made, was the act of the company and not of Hendee. There is no pretense that Hendee, in his negotiations, acted otherwise than as a director for the company.

3. The principle of rebutter, to prevent circuity of action, can only apply where the recovery by the plaintiff will give the defendant a right of action to recover exactly the same amount from the plaintiff. The parties must be the same, and the damages recovered by the plaintiff must be the exact measure of damages to be recovered by the defendant. *Robinson* v. *Leavitt*, 7 N. H. 73.

4. The signatures not being disputed, the authority of the directors to sign the note is admitted. There was no evidence to show want or failure of consideration.

5. This goes on the ground that the requirements of the by-laws have been satisfied; but if the requirements of the by-laws have not been satisfied, there is no discharge or contract of indemnity.

BELLOWS, J. The making of the note, including the authority of the agents, must be regarded as admitted, under the operation of the 44th rule of court. *Great Falls Bank* v. *Farmington*, 41 N. H. 32 ; *Williams* v. *Gilchrist*, 11 N. H. 535.

The question then is, whether the defendants, or either of them, have set up a valid defense. At the time the note was made, both were members of the firm, and both bound, and the defense urged is, that they have since been discharged by agreements with the

payee. If this be so, as between the defendants and the original payee, Hendee, the defense is also available against the plaintiff, to whom the note was transferred after it was discharged. Proof of the agreement with Fletcher, January 25, 1858, would, at most, only tend to show that he on that day ceased to be a member of the company; but as the note was made in August, 1856, it is obvious that he would still be held upon it, unless some valid discharge was shown; and of this there was no evidence. The proof was, therefore, rightly rejected. In respect to the other defendant, Randall, it appears that he offered to prove an agreement with Hendee, in the winter of 1858, the substance of which was, that Randall should go out of the company, and should receive for his share fifteen dollars, and be indemnified against all past liabilities growing out of his membership; that, accordingly, Hendee, who was an acting director of the company, paid Randall the fifteen dollars, and Randall then surrendered to Hendee the certificate of his share in the firm. As to the indemnity, it was proposed to show that Hendee told Randall that if he would thus go out he would give him a written indemnity against all past liabilities, and see him clear and harmless; and that in the course of the conversation Hendee made use of different expressions, saying he would discharge him from all past liabilities, and would give him an indemnity, and also that he would give him a writing to indemnify him, and would discharge him from all past liabilities; that Randall accepted the offer, received the fifteen dollars, surrendered his certificate, and has never since taken any part as a member of the firm. And the question is, whether this evidence tends to prove a contract of indemnity, there being no offer to show any subsequent contract in writing; and if so, whether it was the contract of Hendee, and upon sufficient consideration.

It is to be assumed that the offer was to prove a parol contract to be gathered from various expressions made in the course of the conversation, some indicating an indemnity to be given at a future time, and others a present contract of indemnity; and one question is, whether from this evidence, and the fact of the payment of the fifteen dollars, the surrender of the certificate, and Randall's ceasing to be a member from that time, the jury might legally have found a present contract of indemnity. Some of the expressions offered to be proved are certainly appropriate to such a contract, and we think it ought to have been left to the jury. Besides, we think it was competent to show a contract for a future indemnity in writing, because, to avoid circuity of action, it would operate as a release, inasmuch as the debtor, Randall, would be entitled, in a suit on such contract of indemnity, to recover back the amount he might be compelled to pay. Such is the doctrine of *Robinson* v. *Leavitt*, 7 N. H. 73, where the principle is stated to be, "that when a party pleads matter which, in case of recovery, would entitle him to maintain another suit against the plaintiff, on account of or by reason of that recovery, and for the same amount, the matter so pleaded operates as a discharge of the action, for avoiding circuity."

This doctrine is well sustained by the authorities cited, and

numerous others. *Haynes* v. *Stevens*, 11 N. H. 33; *Durrell* v. *Wendell*, 8 N. H. 369; *Clark* v. *Brush*, 3 Cow. 151; *Cuyler* v. *Cuyler*, 2 Johns. 186, and cases cited; 2 Wms. Saund. 48; *Phelps* v. *Johnson*, 8 Johns. 54; *Tuckerman* v. *Newhall*, 17 Mass. 581.

It is said that whatever contract of indemnity was made, was the contract of the firm, and not of Hendee, but we think that the jury might legally have found otherwise. It is true that Hendee was at that time a director, but the case does not find that in making the agreement he acted as such, and the terms used rather imply the contrary. Besides, there was no evidence that Hendee was empowered to bind the firm by such a promise, and in that case he would himself be bound.

It is also urged that the doctrine of *rebutter* does not apply, because, in a suit on the contract of indemnity, Randall would not recover for its breach the amount of the judgment in this suit; and this may be true, unless the whole amount was paid by him; but whatever he was obliged to pay would be covered by the indemnity, and that sum would be recovered back. In *Phelps* v. *Johnson*, 8 Johns. 54, the contract with one of two makers of a note; both of whom were sued, was to procure and cancel the note, and yet it was held that this was a good defense to avoid circuity, although the judgment in the suit would have been against the two, and might not have been all paid by the one to whom the promise was made. But had judgment been recovered against both, the one indemnified might have recovered back of the plaintiff just what he had been compelled to pay, and this we understand is the foundation of the doctrine of *rebutter*. Nor do we think the agreement invalid for want of consideration, because the jury might legally have found that the contract to furnish indemnity was in consideration of Randall's doing just what he did do; that is, receiving the fifteen dollars for his share, surrendering his certificate, and retiring from the firm; and whether this was strictly according to the mode provided by the rules of the company or not, it was a sufficient consideration for Hendee's agreement; nor do we see how Randall, after that, could have claimed any interest in the assets of the firm.

Upon these views, and inasmuch as a joint promise must be proved to be made by the defendants, the verdict ordered by the court must be set aside and a

*New trial granted.*