## ANSLY v. MOCK.

1. The defendant in a suit at law, filed his bill to enjoin a trial, and pursuant to an order for that purpose, entered into a bond with surety, conditioned to pay the plaintiff "all damages which he might sustain by the

Ansly v. Mock.

wrongful suing out of the injunction " &c.   In a suit by the obligee against the surety, the declaration alledged that the injunction was dissolved, six or seven years after it was awarded; a judgment at law rendered for the plaintiff—the amount thereof; that a *fieri facias* was duly issued thereon, and by the sheriff returned "no property found;" *further*, that when the judgment was rendered and the execution issued, the defendant was insolvent, and unable to pay the same: By reason of all which the bond became forfeited, &c.: *Held*, that the breach was not well assigned, but it should have been shown what was the condition of the principal obligor when the bond was executed; for if he was then insolvent, or became so shortly thereafter, and before, in the ordinary course of proceeding, a judgment could have been recovered, if a trial had not been enjoined, the plaintiff would have sustained no " damages," and nothing more than the costs in Chancery could be recovered.

2. The plea of *nil debit* to an action of debt on a bond, is bad on demurrer; but if the plaintiff demurs to it, the Court should visit the demurrer upon the declaration, if it be defective in substance.

3. In an action against a surety upon a bond, executed in compliance with the order of a Chancellor awarding an injunction to enjoin a trial at law, the records of the suits in Chancery and at law are admissible to show the dissolution of the injunction and the amount of the recovery at law.

4. It is correct as a general proposition, that the penalty of a bond limits the responsibility of one who executes it as a surety, and consequently he is not liable in the event of a breach for interest upon the penalty.

Writ of Error to the Circuit Court of Macon.

THE defendant in error declared against the plaintiff, in debt, setting forth that on the 23d September, 1833, he commenced an action, &c., against Peter Robertson, and on the 31st of October, 1834, the defendant in that action prayed for and obtained an injunction against the further prosecution of the same, upon executing a bond to the plaintiff, in the penal sum of one thousand dollars, conditioned to pay him "all damages which he might sustain by the wrongful suing out of said injunction," &c.   In pursuance of the order, Robertson and the defendant signed, sealed, and delivered an injunction bond, dated the 31st day of October, 1834, in the penalty above mentioned, the condition of which recites the proceedings at law, the bill in Chancery, the order thereon, and undertakes the performance of what is there required upon the contingency provided.   The bill was filed on the day

the injunction was obtained, and the injunction was served on the the plaintiff on the 10th January, 1835.

It is then alledged, that the injunction was dissolved and bill dismissed in July, 1840, and the plaintiff permitted to proceed in his suit at law. Afterwards, at the spring term, 1842, of the Circuit Court of Lowndes, in which the suit was pending, the plaintiff recovered a judgment against Robertson for the sum of $1,071 32, and costs. *Further*, on the 10th May, 1842, an execution issued on that judgment against the goods and chattels, lands and tenements of the defendant therein, which was received by the sheriff, &c., on, &c., and by him returned "no property found."

The plaintiff then avers, that at the time the judgment was rendered, and the execution issued and returned against Robertson, he was insolvent, and unable to satisfy the same. By reason of all which, the bond declared on became forfeited, &c.

The defendant pleaded—1. *Nil.debit.* 2. *Nul tiel record*, as to the judgment alledged in the declaration. 3. That the plaintiff hath not been damnified by reason of any matter, cause, or thing, in the condition of the bond described in the declaration. 4. A set off to an amount beyond the penalty of the bond. To the first and third pleas the plaintiff demurred; his demurrer was sustained to the first, and overruled to the fourth plea. An issue was then joined upon the three last pleas, and the cause submitted to a jury, who returned a verdict for the plaintiff, for $379 15, and judgment was rendered accordingly.

On the trial, the presiding judge sealed a bill of exceptions at the instance of the defendant, which presents the following points: 1, The plaintiff gave in evidence a regularly certified transcript of the record of the suit in Chancery, between Robertson and the plaintiff, in which the bond declared on was executed, notwithstanding the defendant objected to its admissibility. 2. He also laid before the jury the record of the prooceedings and judgment of the suit at law, to enjoin which the bill was filed, although the defendant objected to its competency as evidence. 3. The issue upon the fourth plea required the defendant to prove a promise by the plaintiff to pay the debt proposed to be set off within six years previous to the commencement of this suit. To sustain this issue, it was admitted by the plaintiff, that Robertson would testify that the defendant was entitled to a set off against

Ansly v. Mock.

the cause of action embraced in this suit, to the amount of five hundred dollars or thereabout. That the set off consists of un-settled claims against the plaintiff, which claims Robertson had entirely lost sight of, as he considered the plaintiff entirely insol-vent. It was admitted by the defendant that the set off claimed accrued before the institution of the suit at law, which had been enjoined, viz: previous to 1832. This was all the evidence ad-duced by the defendant, and the Court decided, that it did not es-tablish a subsequent promise, so as to take the set off out of the influence of the statute of limitations. 4. It was proved that the amount of the judgment recovered in the suit at law was larger than the penalty of the bond with interest thereon. The Court charged the jury, that the measure of the plaintiff's recovery would be the penalty of the bond with interest thereon from the return of the execution against Robertson "no property found." 5. The defendant prayed the Court to instruct the jury, that the plaintiff was bound to prove the execution of the injunction bond by Ro-bertson, the principal therein, and the transcript of the records, which had been given in evidence by the plaintiff, did not show that fact: but the Court refused thus to charge.

It was proved that Robertson was solvent when the injunction was awarded, but became insolvent before the dissolution there-of. It was admitted by the plaintiff in error that a judgment was confessed for part of the demand sued for, previous to the trial, as stated in the argument of the counsel for the defendant in error.

T. WILLIAMS, for the plaintiff in error, made these points:—
1. The demurrer to the defendant's first and fourth pleas should have been visited upon the declaration. 2. The transcripts of the records of the proceedings both at law and in equity, should have been excluded. 3. The Court should not have instructed the jury, that the evidence before them did not show a subsequent promise by the plaintiff to pay the demands proposed to be set off; and erred in instructing them, that the plaintiff might recov-er damages beyond the penalty of the bond. 4. It was essential to the plaintiff's right to recover, that he should have proved the execution of the bond by Robertson, and the Court should have charged the jury that the records offered by the plaintiff did not establish the fact.

J. P. SAFFOLD, for the defendant in error.   The main ground upon which the plaintiff in error hopes to reverse the judgment of the Circuit Court, is, that the jury were charged that the measure of damages was the penalty of the bond, with interest thereon from the time the execution against Robertson, the principal obligor, was returned "no property" found.   It is admitted that the authorities upon the general question are somewhat contradictory; but in a case like the present, where by long continued litigation, the amount intended to be secured exceeds the penalty of the bond, interest is recoverable.   [3 Caine's Rep. 48, and note (a) ; 2 Burr. Rep. 1094 ; 6 Ves. Jr. Rep. 92 ; 1 Vern. Rep. 349; Shower's Parl. Cases, 15 ; 1 Kinne L. Comp. 151, § 23; 1 Gall. Rep. 348, 360 ; 9 Cranch's Rep. 104, 112 ; 2 Dall. Rep. 252 ; 3 Atk. Rep. 517 ; 1 Mass. Rep. 308.]   The case in 4 Ala. Rep. 671, in which the penalty of the bond is said to be the measure of the recovery, is unlike the present.   That was a recognizance in favor of the State.

The declaration it is believed, is free from all objection, and the demurrer of course could not have been visited upon it.   [2 Porter's Rep. 249.]   No objection has been pointed out to the transcripts of the records, which were offered by the plaintiff; and in respect to the proof of a subsequent promise to take the sets off out of the statute of limitations, it is enough to say that none was given.

None of the issues threw upon the plaintiff the burden of proving the execution of the bond by Robertson.   The sets off it may be remarked further, were against Robertson, and if not barred, are inadmissible under the plea.

It is admitted by the plaintiff in error, that the record is imperfect, in not showing a confession of judgment by him, for the sum of $723 21, at a term previous to the trial, in order to obtain a continuance as to the residue of the demand sought to be recovered.   If then, the Court should be of opinion, that interest upon the penalty is not recoverable, it is suggested that the proper judgment may be here rendered.

COLLIER, C. J.—1.  The declaration seems to us to be fatally defective.   It recites the bond at length, avers that it was taken pursuant to the order of the judge who awarded the injunction, alledges the dissolution of the injunction, the recovery at law,

Ansly v. Mock.

the return of a *fieri facias* against Robertson "no property found," the insolvency of Robertson *when the judgment was rendered and execution issued,* and as a consequence thereof, deduces the forfeiture of the condition of the bond, and the liability of the defendant. This is not a good assignment of a breach. It is not co-extensive with the undertaking of the obligors, and does not comprehend its effect. They engage to pay the plaintiff all damages he may sustain by the wrongful suing out of the injunction. The extent of these damages do not depend upon the dissolution of the injunction, the recovery of a judgment thereon, the insolvency of the principal obligor at that time and afterwards, and the return of "no property found" to a *fieri facias* on that judgment. Yet the plaintiff deduces the liability of the defendant, the surety, from these premises.

It is in general sufficient to assign the breach in the words of the covenant, promise, &c. Thus in an action upon a covenant to repair, it is enough to alledge that the defendant did not repair; or upon a covenant not to permit an escape without a warrant from the sheriff, it is sufficient to say that the defendant permitted the escape of A, without a warrant, without alledging how A was arrested. [Mansel on Dem. 44-5.] But it is said not to be always sufficient to negative the words of the condition of a bond. Accordingly, where the undertaking was to secure certain lands, &c. " free from all legal incumbrances, either by deed or mortgage, or otherwise now in existence, and binding upon the premises ;" the breach alleged was, that the defendants " did not free the land from all legal incumbrances, either by deed, mortgage, or otherwise, then in existence, and binding upon the premises." The Court held the declaration bad in substance, for the insufficiency of the assignment, which *did not necessarily show a breach.* [Julliand v. Burgott, 11 Johns. Rep. 6. See further, U. S. v. Spalding, 2 Mason's Rep. 478 ; Craghill v. Page, 2 H. & M. Rep. 446 ; Winslow v. Commonwealth, Id. 459.]

Under the statute of 8 and 9 Wm. III. ch. 11, of which our statute is almost a literal copy, it is held to be *compulsory* on the plaintiff to assign breaches of all the covenants for the breach of which he claims damages. [2 Caine's Rep. 329 ; 2 Johns. Cas. 406 ; 4 Johns. Rep. 213.] But the plaintiff has his election to declare for the penalty only, and set forth all such breaches in his replication to the defendant's plea of performance, or to set

57

them forth in his declaration.   If, however, he sets out the condition in his declaration as his cause of action, or a part of it, he should show how it became absolute ; and this must be done, so that it may appear, that there has been a breach for which damages are recoverable.   And if a good breach be not assigned, the defendant may demur generally.   [Mansell on Dem. 44.] In Gentry v. Barnett, 6 Monr. Rep. 114, it was held, that to a · plea of conditions performed, the plaintiff may reply and assign breaches, but having assigned one or more specially in his declaration, and been defeated by the pleadings of the defendant, he cannot afterwards assign new breaches.   This may suffice to show, that although the plaintiff might have declared for the penalty of the bond, and set out a breach of the condition in a replication; or after judgment by default, or upon demurrer, have suggested breaches on the roll, yet if he elects to do this in his declaration, the breach must be well assigned.

In Dickinson v. McCraw, 4 Rand. Rep. 158, the Court say, that in declaring on an attachment bond, it is not sufficient to alledge, that the defendant " did not pay all such costs, &c. as accrued," it must be expressly averred that costs and damages have been sustained.   An averment of a breach of a bond only entitles the plaintiff to recover what he is legally entitled to by reason of the breach.   [McDowell v. Burwell, Id. 317; Flanagan v. Gilchrist, at this term.

In the case before us, it is not alledged that Robertson, the complainant in Chancery was solvent when the injunction was granted, and this cannot be assumed or implied from any allegation in the pleadings.   Now he may have been entirely unable to respond to the plaintiff when the judgment was recovered and execution issued, and yet have been entirely good when the proceedings at law were enjoined, and so have continued for a half dozen years and more thereafter.   Or he may have been insolvent not only at the latter, but at the former period also.   The declaration is at fault in omitting to alledge the condition of Robertson at the time the injunction was obtained.   And this defect is a substantial one ; for if he was then solvent, and so continued for a sufficient length of time as to enable the plaintiff to obtain a judgment and collect the amount according to the regular course of proceeding, had he not been enjoined, then the plaintiff would have sustained damages in consequence of the injunc-

tion, to the amount of the judgment and costs. But if he was then insolvent, and so continued up to the rendition of judgment, the only damages to which the plaintiff is liable is the costs to which he was subjected in Chancery—and for these, no breach is laid.

Having attained this conclusion, the only question upon the point is, should the demurrer to the pleas have been visited upon the declaration. It is said to be a rule, that on demurrer the Court will consider the whole record, and give judgment for the party who appears to be entitled to it. This rule has its exceptions, but the case at bar is not one of them. [Step. on Plead. 144-5; 1 Mass. Rep. 495; 2 Id. 84; 6 Id. 389; 16 Id. 1; 11 Pick. Rep. 70, 75.

The plea of *nil debit* was certainly bad, but the Court (as we have seen,) should have looked at the entire record, and given judgment against the party who committed the first fault in pleading. Now although the proof upon this point was (as it would appear) ample, and the instructions of the Court correct, yet this could not cure the defect in the declaration.

2 and 4. No objection has been pointed out to the admission of the records of the suits at law and in Chancery, and we think they were *prima facie* competent to show the dissolution of the injunction and the amount of the recovery at law. They should not have been rejected upon the ground that they were *res inter alias*. The liability of the defendant in the present suit, is accessorial to Robertson, who was one of the parties to those cases, and this it seems to us, is quite sufficient to have authorized the Courts to admit the transcripts.

3. In the Bank of U. S. v. Magill, et al. 1 Paine's Rep. 669, Mr. Justice Thompson, said, where a bond with a penalty is given for the performance of covenants, the recovery must be limited to the penalty, though damages may have been sustained to a greater extent. That becomes the debt due, upon which interest may be added, according to circumstances. Accordingly it has been held, that interest beyond the penalty of a bond may be recovered in the shape of damages, even against a surety. [Harris v. Clap, 1 Mass. Rep. 308.] And in Smedes v. Hooghtaling et al. 3 Caine's Rep. 48, *Kent, C. J.* said, "On a review of all the decisions on this subject, the Court think this rule ought to be adopted: That interest is recoverable beyond the penalty

of a bond. But, that the recovery depends on principles of law, and is not arbitrary at the discretion of a jury. See Paine v. McIntier, 1 Mass. Rep. 69 ; Carter v. Carter, 4 Day's Rep. 30, and cases there cited; Maryland v. Wayman, 2 G. & Johns. Rep. 279 ; U. S. v. Arnold, 1 Gall. Rep. 348.

In Clark v. Bush, 3 Cow. Rep. 151, the question whether the obligee could recover damages beyond the penalty was consider- ed, and many authorities critically examined. The Court there said, " The weight of the authorities is, I think in favor of the doc- trine, that in debt on bond nothing more than the penalty can be recovered, at any rate, nothing beyond that and interest, after a forfeiture, even against the principal obligor." But if the princi- pal may be charged with interest thereon, still it is clear, the ex- tent of the surety's liability " is the penalty of the bond."

In Branguin v. Perrot, 2 Bla. Rep. 1190, Ch. J. DeGrey con- sidered that the penalty by consent of parties, ascertained the *maximum* of the plaintiff's damages, and if that is paid him, he can desire no more. Such was also the decision in White v. Sea- ly, et al. Doug. Rep. 49 ; but afterwards, in Lansdale v. Church, 2 T. Rep. 388, Buller, Justice, declared he was not satisfied with the decision in White v. Sealy ; and cited Elliott v. Davis, Bunb. Rep. 23; Collins v. Collins, 2 Burr. Rep. 820, and Holdipp v. Otway, 7 T. Rep. 447, in which the plaintiff had been allowed to recover damages exceeding the penalty. Lord Thurlow, in Tew v. The Earl of Winterton, 3 Bro. Ch. R. 490, and Knight v. Maclean, Id. 596, held, that the obligor could not be charged be- yond the penalty of the bond ; and the King's Bench and Com- mon Pleas have subsequently so laid down the law. See Wilde v. Clarkson, 6 T. Rep. 303 ; McClure v. Dunkin, 1 East's Rep. 436 ; Hefford v. Alger, 1 Taunt. Rep. 218.

Many of the American decisions maintain that the obligee may recover interest upon the penalty from the time of the first breach of the condition, if the damages amount to so much. Yet these adjudications are contradictory upon this point, even as it respects the principal obligor, and the learned Judge who deli- vered the opinion of the Court in Clark v. Bush, *supra*, says Har- ris v. Clap, in adjudging that the surety may be charged beyond the penalty, stands " solitary and alone." [See Payne v. Ellzey, 2 Wash. Rep. 143 ; Hardy v. Martin, 1 Cox's Rep. 26 ; Hal-

Ansley v. Mock.

ler v. Ardley, 3 C. & P. Rep. 12 ; Lloyd v. Hatchett, 2 Aust. Rep. 525 ; Mackworth v. Thomas, 5 Ves. jr. Rep. 529.]

We might add to these many other citations, but we deem this wholly unnecessary, as they may be found referred to in the cases cited. Upon principle, we are entirely satisfied that the penalty must limit the responsibility of the surety. The obligors stipulate to perform a duty should the event provided for by the condition, happen, or if they fail to do so, then to pay the penalty. Although such is the undertaking, the penalty is not regarded as an absolute debt, to which the obligee is entitled upon the obligor's default, but the recovery-is to be admeasured by the damages actually sustained. If these damages exceed the penalty, the surety is not liable for the excess ; for he has by his contract, provided for his discharge, upon the payment of the sum stipulated. If the law were otherwise, says Lord Kenyon, " an obligor who became bound in a penalty of £1000, conditioned to indemnify the obligee, may be called upon to pay £10,000, or any larger sum, however enormous." True, a Court of Equity has sometimes rendered a decree in favor of the obligee for a sum greater than the penalty. Thus, in Grant v. Grant, [3 Russ. R. 598,] where proceedings were restrained for many years by injunction, without misconduct on the part of the creditor, Lord Eldon said, " In his opinion, the plaintiff's demand was not to be limited to the amount of the penalty of the bond ; for he had always considered, on the authority of Duval v. Terry, (Show. P. C. 15,) that a party who had been restrained from proceeding at law, while the debt was under the penalty, had a right in a Court of Equity to principal and interest beyond the penalty of the bond." Again, " With respect to the general jurisdiction, I entertain no doubt whatever, that if a person indebted in a sum of money by the bond, files his bill for an injunction, stating that he is entitled by reason of equitable circumstances, to be relieved from the obligation which presses on him at law, and there is no neglect or default on the part of the defendant, this Court has a right to consider the bond creditor as submitting to do equity when he asks equity ; and whatever abstruse and delicate reasoning there may be, as to whether the excess of the debt beyond the penalty, is a specialty debt or a simple contract debt, this Court will find a way to give execution for the difference. On the other hand, if it were the creditor's own fault that he had

not enforced payment of his debt sooner, it would not be competent for him to take the benefit of the same rule." (See also, Clarke v. Seton, 6 Vesey, jr. Rep. 411 ; Clarke v. Lord Abingdon, 17 Id. 106.) But if it were allowable to apply this equitable rule in a suit at law, it might perhaps be questioned whether the record discloses such a case of protracted and vexatious litigation on the part of the complainant in equity, as to authorise a judgment for interest upon the penalty against the surety in his bond.

Without stopping to inquire whether a recovery might be had against the principal obligor, in an action upon the bond for a larger sum than the penalty, we are satisfied that such a judgment cannot be rendered against the surety. It remains but to add, that the judgment is reversed, and the cause remanded.